Katie Ruth ANDERSON et al., Plaintiffs-Appellants,

v.

J. J. NOSSER et al., Defendants-Appellees.

James BRADLEY et al., Plaintiffs-Appellants,

v.

J. J. NOSSER et al., Defendants-Appellees.

No. 28971.

United States Court of Appeals, Fifth Circuit.

March 3, 1972.

Simpson, Circuit Judge, with whom Gewin, Coleman, Dyer, Morgan, Clark, Ingraham and Roney, Circuit Judges joined, concurred specially and filed opinion.

Tuttle, Circuit Judge, with whom John R. Brown, Chief Judge, and Wisdom, Circuit Judge, joined, concurred in part and dissented in part and filed opinion.

Goldberg, Circuit Judge, with whom John R. Brown, Chief Judge, and Wisdom and Thornberry, Circuit Judges, joined, concurred in part and dissented in part and filed opinion.

Lawrence D. Ross, Jackson, Miss., Bernard Jolles, Franklin, Bennett, Des Brisay & Jolles, Portland, Or., Robert L. Beerman, Morrison, Paul & Beiley, New York City, for plaintiffs-appellants.

William A. Allain, Asst. Atty. Gen., of Miss., Jackson, Miss., Joseph S. Zuccaro, Edwin E. Benoist, Jr., Natchez, Miss., Charles A. Marx, A. F. Summer, Atty. Gen. of Miss., Jackson, Miss., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM, and RONEY, Circuit Judges.

BELL, Circuit Judge:

The court, having been convened en banc, having considered additional briefs and having heard oral argument, modifies the panel decision in this matter, Anderson v. Nosser, 5 Cir., 1971, 438 F. 2d 183, as follows.

I.

The federal cause of action is premised on 42 U.S.C.A. § 1983. The panel decision was that the uncontradicted evidence made out a case as a matter of law that cruel and unusual punishment was inflicted upon plaintiffs, or some of them, at the Parchman State Penitentiary. Section 1983 vouchsafes "[all] rights, privileges or immunities secured by the Constitution". The complaints alleged the deprivation of several such rights including the right not to have cruel and unusual punishment inflicted upon plaintiffs as well as the right not to have summary punishment imposed upon them without due process of law. We have carefully considered the evidence adduced on the trial and have concluded that the cause of action under §

1983 sounds more in the nature of a deprivation of due process through the infliction of summary punishment than the imposition of cruel and unusual punishment within the meaning of the Eighth Amendment. We therefore pretermit * decision on a § 1983 violation based on cruel and unusual punishment and place our decision on the due process clause of the Fourteenth Amendment. The result from the standpoint of a cause of action is the same: the establishment of a claim under § 1983 of such dimension as to warrant a directed verdict.

■ The panel concluded that a verdict should have been directed on the cause of action based on pendent jurisdiction that plaintiffs were not taken before a magistrate within a reasonable time as required by the Mississippi statute. Miss.Code Ann. § 2473. We affirm this holding.

■ The panel also held that a verdict should have been directed on the pendent jurisdiction claim based on mistreatment of prisoners at the state penitentiary as proscribed by Mississippi law. Miss. Code Ann. § 7930 (1964 Ann.Supp.). This portion of the panel decision will be deleted. This is for the reason that this issue was not submitted to the jury and there was no objection on the part of plaintiffs as to the failure to submit it. We have given careful consideration to the entire record and have concluded that this was not an ultimate issue in the case although such a cause of action was alleged in the amended complaints.

As to the causes of action based on § 1983 and on failure to take plaintiffs before a magistrate, and the directed verdict on each cause as to liability, we next consider which defendants were due to be cast under the directed verdict. The panel imposed joint and several liability on defendants Brazeale, Robinson, Cameron, Cowart, Beach, Rickard and Flowers. We modify this holding.

## II.

The facts center on two principal events. The first occurred in Natchez, Mississippi. The other was at the Parchman State Penitentiary, 215 miles away.

The Natchez occurrence included the arrest of plaintiffs while engaged in a civil rights march without a parade permit on one of the principal streets of Natchez, and their subsequent detention at the city auditorium for several hours. The arrests took place on Saturday, Sunday, and Monday, October 2, 3, and 4, 1964 under the same circumstances. The children who were arrested were released to their parents and some of the arrestees were released on bonds of $200 or on their own recognizance. The remaining arrestees were removed to the Parchman State Penitentiary on commercial buses, three busloads on Saturday, two on Sunday and one on Monday.

The jails of Natchez were insufficient to accommodate the number who did not make bond, and no arrangements were made to take them before a magistrate so that the magistrate might determine whether they should be held. Chief of Police Robinson checked with several counties and municipalities in an effort to find space for the arrestees but had no success. He then arranged to have them sent to Parchman.

The Natchez defendants are Chief Robinson, four city policemen, Cowart, Beach, Rickard, and Flowers, and Fire Chief Cameron who was pressed into service by the city council as an ex officio policeman. All assisted Chief Robinson but he testified, and this testimony was uncontradicted, that he made every arrest. It also appears that he was in complete charge at the auditorium. He did not go to Parchman but arranged over the telephone to have defendant Breazeale, the superintendent of the Parchman Penitentiary, receive and detain the arrestees pending their making bond. They made bond over the next

---

* See the special concurring opinion of Judge Simpson herein in which JJ. Gewin, Cole- man, Dyer, Morgan, Clark, Ingraham, and Roney join.

several days, with the last arrestee leaving Parchman on Wednesday, October 6.

The Mississippi statute requires in specific terms that "Every person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case." Section 2473, supra. Chief Robinson testified that he was familiar with this statute and with his duty under it. He also testified that he contrived the rule that no one would be taken before a magistrate who had not posted bond, and that he knew that posting of bond had nothing to do with the requirement that the arrestees be taken before a magistrate. This makes it clear, as the panel held, that Chief Robinson failed to comply with this statute. However, the panel went further to hold the fire chief and the four police officers for this same dereliction.

■■ It must be remembered that this holding is on the contention that a verdict should have been directed against them, the jury having found no liability. Unlike the absence of conflicting facts on the question in the case of Chief Robinson, there is a considerable conflict as to these five defendants. There is no testimony that the fire chief or the four police officers ever arrested anyone or that they were in position to take plaintiffs before a magistrate. As stated, the Chief of Police made every arrest and was in complete charge at the auditorium. In our view, whether they violated this statute as arresting officers was a jury question, and it follows that there is no basis for directing a verdict against them on this claim. The panel properly held that a verdict should have been directed against Chief Robinson on this claim.

■ The panel also held that Breazeale, the Parchman superintendent, who had nothing whatever to do with the Natchez events, was jointly and severally liable under this state claim. The question then is whether a verdict should have been directed against Breazeale for having failed to take the arrestees before a magistrate. He had nothing to do with the arrests or the detention in Natchez. It appears without contradiction that he had no part in the bonding procedures established by Chief Robinson for the arrestees in Natchez and Parchman. His sole role was that of jailer at Parchman. The statute places the responsibility on the arresting officer. Thus we conclude that a directed verdict was not due on this claim as to Breazeale.[1]

This leaves the claim based on the punishment inflicted upon plaintiff-arrestees at Parchman. This punishment was solely the work of Breazeale. He agreed to detain the arrestees for the City of Natchez. No arrangements were made as to the type of custody. He alone, insofar as the record shows, determined that he would place them in a section of the prison reserved for felons who for one reason or another were required to be in maximum security. He removed these felons from this section of the prison and placed them elsewhere. He had a set procedure which applied to felons in this section of the prison and which was different from the treatment accorded the other 1800 or so felons at Parchman who were not maintained in maximum security. Breazeale made the decision to apply this procedure to the arrestees from Natchez rather than giving them the milder treatment accorded felons generally.

One facet of this special treatment was that each person was compelled to take a laxative upon admission to maximum security. He applied this procedure to the arrestees who testified. Another tactic then employed in this section of the prison was that male prisoners were deprived of their clothing and issued underwear as their sole wearing apparel

1. There is some confusion in the record as to whether Breazeale was tried on this issue. It appears that a summary judgment had theretofore been granted in his favor on this claim. At any rate, our holding moots the question.

while confined.[2] This tactic was doubly imposed on the male arrestees. They were stripped of their clothing and left naked for varying periods of time, some for as long as 36 hours. None were issued underwear. Some were allowed to claim and wear their own underwear; one was allowed to wear the top to his underwear but not his shorts.

As to the female arrestees who testified, they were compelled to take the laxative. They were deprived of their coats and other outer garments, stockings and shoes, but were allowed to wear their dresses and undergarments.

All arrestees were confined in cells designed to accommodate two persons, having two bunk beds, one lavatory, and one commode. They were not given mattresses, pillows or cover. The temperature ranged from 60° to 70°. From four to eight persons were placed in each of the cells. They slept on the bare steel beds or on the floor. They huddled together for warmth.

Despite the forced consumption of the laxative, toilet paper was in short supply. The penitentiary authorities blamed this on the fact that plaintiffs wasted the paper by covering the bunks with it.

This may have been true, but it appears without dispute that toilet paper was in short supply. The penitentiary was also niggardly in supplying sanitary napkins to some of the female plaintiffs, it becoming necessary for one plaintiff to use her slip instead and for another to tear her slip into pieces for this purpose.

Two prisoners suffered so-called "breakdowns" during the confinement and were sent back to Natchez.

■ These facts appear without dispute,[3] and we think that they make out a case as a matter of law against Brazeale of summary punishment without any semblance of due process within the teachings of Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. See also Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (violation of Fourth Amendment through illegal search and mistreatment during the search by police officers stated a cause of action under § 1983). In Screws, a prisoner was beaten to death by the arresting officers, one of whom was the sheriff. He was prosecuted under 18 U.S.C.A. § 242 for violating the civil rights of the prisoner. This statute is similar to § 1983[4] in all respects ex-

2. The present superintendent of Parchman testified that the practices of forcing the consumption of laxatives on prisoners in maximum security and giving them only underwear for clothing has been discontinued.

3. Plaintiffs also complain of having been given blood tests. The purpose of and the need for these tests was at least substantially disputed. One arrestee was found to have an infectious disease. The tests were given in the interest of preventing the spread of the disease. The tests disclosed that several others had infectious diseases. Whether this was an appropriate procedure and justified in an institution such as a prison under the circumstances was a jury question.

4. 42 U.S.C.A. § 1983:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

18 U.S.C.A. § 242:
 "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life."

cept for the use of the word "willfully" in the criminal statute. See Monroe v. Pape, supra, 365 U.S. at 187, 81 S.Ct. 473.

Here plaintiff arrestees were not beaten. However, they were charged with the minor offense of parading without a license in violation of a municipal ordinance for which the maximum sentence was a fine of $300 or 90 days. They had not been convicted and were in Parchman for detention pending the making of bond. The punishment they suffered has been described; it was designed for incorrigible felons but exceeded even the design. It was inflicted arbitrarily and in the unfettered discretion of Superintendent Breazeale. He was the prosecutor, judge and jury in inflicting what we determine to be summary punishment. The imposition constituted a violation of a principle basic to the concept of due process of law—no punishment of mere arrestees without a trial. Screws, supra, 325 U.S. at 106, 65 S.Ct. 1031.

We have previously held that a verdict should have been directed against Chief Robinson, the arresting officer, for failing to take plaintiffs before a magistrate. We now hold that a verdict should have been directed as requested against Superintendent Breazeale for violating plaintiffs' constitutional rights secured to them by § 1983, to-wit: denial of due process of law through summary punishment.

 This leaves for decision whether Chief Robinson and the other Natchez defendants should have been included, along with Superintendent Breazeale, in the directed verdict for the punishment at Parchman. In Nesmith v. Alford, 5 Cir., 1963, 318 F.2d 110, we applied principles of tort law and charged all who had a substantial role in an arrest with a § 1983 violation. We found that their actions throughout were interlocked and intertwined, 318 F.2d at 119. The chain of causation which started in Natchez, for purposes of a directed verdict, may well have been broken or at least a jury might find that it was broken, as the jury here may have found, when plaintiffs were dispatched from Natchez to Parchman. On the other hand, it may be argued that as to Robinson, plaintiffs were at Parchman without having been taken before a magistrate, and that an appearance before a magistrate might have resulted in their not having been taken to Parchman. They would thus have avoided the punishment in question. It is true that Chief Robinson put them beyond the reach of a magistrate by sending them to Parchman. Nevertheless, questions of causation are usually for a jury under the Seventh Amendment. See Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 374,[5] on when a verdict should be directed. Here the jury might have drawn the inference that the conduct of Breazeale in inflicting the punishment described above was not foreseeable to Robinson. See Prosser, Law of Torts (4 Ed., 1971), p. 390, on questions of foreseeability being for the jury. Indeed, there is nothing in the record from which one might draw an inference that such unusual punishment was foreseeable.

 There was no showing whatever that the other Natchez defendants, Robinson's subordinates, played any part in the decision to send the arrestees to Parchman. This circumstance supports the position that a directed verdict was not due against them on the § 1983 claim. We thus conclude that plaintiffs were not entitled to a directed verdict on the § 1983 claim as to liability against Robinson, Cameron, Cowart, Beach, Rickard and Flowers.

5. " . . . If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. . . "

In sum, we hold that a directed verdict was due against Breazeale as to liability on the § 1983 claim based on the improper treatment at Parchman. A directed verdict was due against Chief Robinson as to liability for his violation of the Mississippi statute in failing to take plaintiffs before a magistrate.

On remand, all plaintiffs who can show themselves as having suffered the punishment as described herein under the § 1983 claim may assert their claim for damages. The same is true as to the plaintiffs who fall into the category of those who were not taken before a magistrate. The § 1983 damages will be asserted against Breazeale alone. The damages for failing to take plaintiffs before a magistrate will be asserted against Robinson alone.

Except as modified, the results reached in the panel decision are adopted.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.

SIMPSON, Circuit Judge, with whom GEWIN, COLEMAN, DYER, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges, join, concurring specially:

I voice no objection to the opinion prepared for the en banc Court by Judge Bell with one slight but nevertheless significant exception.

Rather than hold that we "pretermit decision on a § 1983 violation based on cruel and unusual punishment" I would decide forthrightly that no violation of Eighth Amendment rights warranting the direction of a verdict as to liability was made out below, and definitely disapprove the panel decision to this effect.[1]

TUTTLE, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, and WISDOM, Circuit Judge, join, concurring in part and dissenting in part:

Having concurred in the original opinion for the court, see Anderson v. Nosser,

5 Cir., 1971, 438 F.2d 183, I now adhere to all that is said in that opinion. I agree that the relief now granted by the court under the provisions of the Fourteenth Amendment is appropriate, but, like my colleague, Judge Goldberg, I also believe that the relief afforded against the other defendants was appropriate. The breaches of the plaintiff's rights by all of these defendants was, in light of the fact that they had been convicted of no crime, not only a violation of their Fourteenth Amendment rights, but their rights not to be subject to cruel and unusual punishment under the Eighth Amendment. For myself, I would hold that the actions described in the opinion of the court that occurred at Parchman were cruel and unusual punishment, no matter what the status of the person in custody. However, the circumstance of the confinement of these plaintiffs, none of whom had been convicted of any offense, makes it even more apparent that the Eighth Amendment prohibits what was done to them. Ever since the Supreme Court decided Weems v. United States in 1909, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, it has been held, as stated in the syllabus of the Weems opinion, that "in interpreting the Eighth Amendment it will be regarded as a precept of justice that punishment for crime should be graduated in proportion to the offense."

I, therefore, concur in the opinion and judgment of the court as far as it goes to afford relief. I dissent from that part of the opinion and judgment which denies relief as against the defendants covered by the original opinion and which holds that relief afforded is mandated only by the prohibitions contained in the Fourteenth Amendment.

GOLDBERG, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, WISDOM and THORNBERRY, Circuit

---

1. My views as to civil liability under the cruel and unusual punishment clause under the Eighth Amendment are as expli-

cated in my special concurrence in Roberts v. Williams et al., 5 Cir. 1971, 456 F.2d 819.

Judges, join, concurring in part and dissenting in part:

I neither retreat nor recede one whit from my analysis of the facts and law in writing for the original panel in this case. *See* Anderson v. Nosser, 5 Cir. 1971, 438 F.2d 183. Specifically, I retract not one jot or tittle from the decision that the perpetrated deeds which occurred at Parchman constitute cruel and unusual punishment interdicted by the Eighth Amendment. While believing that the heinousness of the Parchman events does not tolerate judicial pretermission, I nevertheless do not dissent from the holding that such perpetrations also violate the Due Process protections afforded by the Fourteenth Amendment. There are many roads to Rome, and while one is clearly marked "Eighth Amendment," I agree that passage can be had along that wide, familiar boulevard known as "Due Process."

While I accede to the applicability of the Due Process avenue, I am unable to assent to the wholesale absolution of various Natchez defendants. My Brother Bell's opinion limits liability for the Natchez derelictions to Chief of Police Robinson, exculpating his subordinates and associates. It is clear that the Fire Chief and the four police officers, acting pursuant to Robinson's commands, assisted in arresting the demonstrators, in detaining them in the auditorium, and in herding them off to Parchman. Since these Natchez defendants participated directly in the denial of magistratical confrontation which resulted in the invasion of the plaintiffs' rights, I perceive no reason to splice the rope that noosed the plaintiffs. Indeed, any other result runs counter to this court's decision in Nesmith v. Alford, 5 Cir. 1963, 318 F.2d 110, cert. denied, Sullivan v. Nesmith, 1964, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420. In addition, I am unable to concur in the exoneration of Superintendrassment and sumiliation", nor for his failure to take the plaintiffs before a magistrate. The noose that began in Natchez finds its final strands in the hands of the Superintendent, and *Nesmith* dictates that the very minimum of liability for Natchez's activities must be visited against the jailer.[1] *See* Whirl v. Kern, 5 Cir. 1969, 407 F.2d 781, cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177. Repressing any penchant for verbiage, I simply iterate the convictions expressed in my original opinion regarding the scope and nature of the defendants' liability.

---

1. The court below entered summary judgment for the defendant Breazeale concerning the plaintiffs' claim for false imprisonment. Defendants assert that this court cannot now reverse that decision since an appeal was taken therefrom. The simple answer to this contention can be found in F.R.C.P. 54. Rule 54(b) provides that unless otherwise appealable by statute a district court order adjudicating less than all of the claims in a single action is not a final judgment and thereby appealable unless the district judge makes an express determination that there is no just reason for delay and an express direction for the entry of judgment. Thus, if a district judge does not "certify" a partial adjudication, it remains interlocutory in nature and cannot be appealed until properly certified or until the district court enters judgment disposing of all of the claims, and all of the parties. The court below made no such certification, and hence the court carried Breazeale's summary judgment order with the case. That order did not become final until after the jury returned its verdict and the district court entered judgment which disposed of the entire case. *See generally*, 6 J. Moore, Federal Practice ¶ 54.28 and cases cited therein.