Johnny CLEMMONS,
Plaintiff-Appellant,

v.

Officer GREGGS et al.,
Defendants-Appellees.

No. 74–2137.

United States Court of Appeals,
Fifth Circuit.

March 20, 1975.

Cooper C. Thurber, Mobile, Ala. (Court-appointed not under Act), for plaintiff-appellant.

Herbert H. Henry, Asst. Atty. Gen., Birmingham, Ala., William J. Baxley, Atty. Gen., Calvin M. Whitesell, William R. Gordon, Montgomery, Ala., for defendants-appellees.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge.

Johnny Clemmons lost a suit for damages for an alleged infliction of cruel and inhuman punishment by an Alabama state prison guard and he appeals.

The case was tried to the District Judge, without a jury. The Court found that "the defendant Greggs' conduct was not motivated by malice or ill will, nor did he intend by his action to punish the plaintiff. He probably overreacted and exercised poor judgment for which he has been disciplined".

The Court further held, "This court is unable to find an intentional infliction of a penalty or harm upon the petitioner. It appears Greggs' conduct was a spontaneous reaction that does not constitute the infliction of punishment".

Judgment went against the plaintiff-appellant and upon briefs and oral argument we affirm.[1]

Clemmons was sentenced to the Alabama state penitentiary (Atmore Prison Farm) for assault with intent to rob and murder. He soon stabbed a fellow prisoner, which landed him in the prison segregation unit. There, on the evening of July 16, 1972, prison officers Greggs, Jackson, and Brady were making a second head count of the inmates because a previous one had turned out one man short. Jackson and Brady were doing the counting while Greggs, as a precautionary measure, stood at the main cell block door. Between him and the prisoners there was a double locking system composed of the doors to the individual cells and the door to the central entrance.

There were about nine or ten prisoner-occupants. They began to rattle their cell doors, to curse the officers, and to throw various solids and liquids. This frightened Greggs. From where he stood he could not tell whether the men were in or out of their cells.

One of the counting officers yelled, "get the gas". Greggs swiftly complied, obtaining two cannisters from the supply kept about forty feet away. Running back to the cell block he saw Clemmons, from within his cell, throw a cup of urine into officer Brady's face. Brady and Jackson ran from the cell block. Greggs then threw the cannisters inside, one of them landing in front of a cell next to the one holding Clemmons. Greggs then locked the main cell block door and followed his departing associates.

For about thirty minutes, prior to the arrival of other prison officials, the men were left to the gas. Four of them were ill enough to have medical attention. The next day Clemmons was examined by a prison doctor, who diagnosed him to be suffering from "inflammatory reaction in the bronchial tubes—going into the lungs", but he further stated that the condition was not necessarily caused by the tear gas. Clemmons remained in the hospital for nine days.

An investigating deputy warden was of the opinion that the use of the gas was unwarranted and unnecessary, so Greggs was disciplined by suspension for a week without pay.

The day after his release from the hospital, Clemmons filed this suit for damages, asserting that cruel and inhuman punishment had been inflicted upon him. Counsel was appointed for him.

■ The sole issue on this appeal is whether, under the facts, Greggs' conduct amounted to the infliction of cruel and inhuman punishment within the meaning of the Eighth Amendment.

In resolving the issue we look first to the basic facts: what Greggs did was not the result of prison policy nor was it the product of a long standing prison condition or practice. The episode was instigated by the disruptive behavior of prisoners sufficiently fractious to be in segregative incarceration. All the prison officers at the scene were so frightened that they reacted, justifiably or not, by leaving the scene. An officer shouted for the gas; Greggs reacted almost by reflex. While the pouring of the urine cannot be said to have justified the throwing of gas, it quite obviously was not done for the purpose of pouring oil on troubled waters. It could have done little to soothe the already aroused fears of the head counters. In any event, the whole thing boils down to a single act of a minor prison functionary. It was not

---

[1] In its findings of fact and conclusions of law, the District Court noted the following:

"January 18, 1974, while this matter was under advisement by the Court, inmates in segregation at this institution seized guards as hostages and before they were released one guard and one inmate were killed and a second guard critically injured".

the result of prior plan or deliberation. At most, it was an ill advised spontaneous reaction to the disturbing behavior of men in prison, who at that point were not noted for non-violent behavior.

■ The use of tear gas when reasonably necessary to prevent riots or escapes or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment, Landman v. Peyton, 4 Cir., 1966, 370 F.2d 135.

Assuming, as the District Court appears to have done, that the use here was not reasonably necessary, we apply the law to what actually happened.

In Roberts v. Williams, 5 Cir., 1972, 456 F.2d 819, cert. denied 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110, we affirmed a finding of infliction of cruel and inhuman punishment in the infliction of blindness and other grievous personal injuries on a county farm prisoner by a mentally unbalanced, grossly incompetent guard. We did so because the occurrence resulted from the "sustained maintenance over a period of time of a needlessly hazardous condition". But we were careful to distinguish this from the errors in judgment of a prison guard or the casual derelictions of minor prison employees.

Moreover, the finding, here, of the District Court that there was no intent to punish is supported by the evidence credited by the trier of the fact. Three minor prison officers were precipitately confronted with a disturbance, if not a minor riot. Until they abandoned the field, their activities were not inconsistent with a *bona fide* effort to bring the situation under control. As Judge Simpson wrote in Roberts v. Williams, *supra*, "The essence of punishment is the intentional infliction of penalty or harm upon another. At the very least punishment comprises conduct so grossly negligent that intent may be inferred from its very nature * * * ".

Without further elaboration, see also the opinion of the same Judge, speaking

for a majority of the Judges of this Court in active service, in Anderson v. Nosser, en banc, 5 Cir., 1972, 456 F.2d 835, cert. denied 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89.

Affirmed.

JOHN R. BROWN, Chief Judge (dissenting in part):

On this record and at this point in time I do not differ with the Court's holding no Eighth Amendment violation occurred, because I am not sure an isolated incident such as this—in violation of established prison regulations—should come within that Amendment. *See, e.g.,* Anderson v. Nosser, 5 Cir., 1972, 456 F.2d 835, 842 (Simpson, J., concurring specially), incorporationg by reference Roberts v. Williams, 5 Cir., 1972, 456 F.2d 819, 834 (Simpson, J., specially concurring).

Instead, my dissent is focused on the Court's erroneous assertion the Eighth Amendment is the only issue before this Court. Completely forgotten was the due process clause under the Fourteenth Amendment. The complaint alleged a Civil Rights Action under 42 U.S.C.A. § 1983. The plaintiff sought recovery for the action of the prison guards under the Fourteenth Amendment as well as the Eighth Amendment. And in this Court appellant continues to urge the Fourteenth Amendment as an alternate ground for relief—citing Johnson v. Glick, 2 Cir., 1973, 481 F.2d 1028.

Two distinctive operational facts are presented. The first, on which the Court focuses, is the decision to use tear gas to allay a possible riot. The second, is whether suitable steps were taken to overcome the harmful effects of the gas once order was in hand. Just from reading the Court's account of the officers' "justifications" a trial court facing up to this issue might well find that the guards were consciously taking no action out of retaliatory or retributive motives. They must be charged with actual notice of the regulation [1] Greggs was suspended

1. FROM: Walter T. Capps, Warden

    TO:    Atmore & Holman Lieutenants & Sergeants

  IN RE: <u>MACE & TEAR GAS</u>

This is to advise that it has been brought to my attention that some of the Officers have used Mace and Tear Gas on occasions when it may not have been necessary.

for violating. Further, at least 40%—four out of nine or ten—of those occupying the area required medical attention. On Due Process the issue is not whether it is enough to find justification for the initial teargassing, but whether there was *any* justification for failing to vent the area during the ensuing 30 minutes.

"Section 1979 [now 42 U.S.C.A. § 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 1961, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505. Of course, the right of action, as a Congressional expression of policy, should not be read to include merely technical torts, such as inoffensive—though unprivileged—touchings. Nevertheless, several of our Sister Circuits have recognized Civil Rights Actions under the Due Process clause in cases similar to this, without relying on any more specific constitutional provision (such as the Eighth Amendment). Draeger v. Grand Central, Inc., 10 Cir., 1974, 504 F.2d 142; Gregory v. Thompson, 9 Cir., 1974, 500 F.2d 59; Curtis v. Everette, 3 Cir., 1973, 489 F.2d 516, cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774;

Johnson v. Glick, 2 Cir., 481 F.2d 1028,[2] cert. denied sub nom. Employee-Officer John v. Johnson, 1973, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324.

Our own Circuit has indicated acceptance of this rule, and in my view the Court errs today by falling away from it. Anderson v. Nosser, 5 Cir., 1972, 456 F.2d 835 (en banc); Hamilton v. Chaffin, 5 Cir., 1975, 506 F.2d 904; Tolbert v. Bragan, 5 Cir., 1971, 451 F.2d 1020; *cf.* Rodriguez v. Jones, 5 Cir., 1973, 473 F.2d 599, cert. denied, 1973, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007.

What—and all—I am saying at this juncture is that the District Judge did not pass upon the due process claim. The plaintiff has not had a trial on a vital part of his case. He is entitled to that even though the Judge might conclude that there was no denial of due process. My dissent does not forecast what that decision should be or what I would do with it if it came back to me on appeal. Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505; Barber v. Motor Vessel "Blue Cat", 5 Cir., 1967, 372 F.2d 626.

---

In the future, Mace and Tear Gas will be used only in case of an emergency. Such as when an inmate is destroying State property, endangering the life of another inmate or Correctional Officer.

Mace and Tear Gas have been placed in the Central Control Station at the Holman Unit and in the Main Cubical [sic] at Atmore Prison Farm for the purpose of an emergency.

Any time that a Correctional Officer is forced to use Mace or Tear Gas, he is to write a report on the details and send it to me.

You are not to use Mace or Tear Gas unless it is absolutely necessary.

Your cooperation in this matter is expected. Plaintiff's Exhibit No. 4.

2. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need

and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033.

Assuming (without deciding in this dissenting opinion) Judge Friendly's analysis is correct, a trial court, facing up to the issue as framed by pleadings and the evidence, F.R. Civ.P. 15(b), might have held the line to have been crossed in this case. On this approach, not only was Greggs suspended for violating a regulation he had to know about, but at least 40% of the prisoners subjected to the gas needed medical attention. Balanced against these injuries, which were substantial, was the fact that from the standpoint of prison security at that stage the guards conceded that they were in no physical danger because of the double-lock system in the cellblock.