Maria MARTINI, Peter, Paul, Pedro and Mildred Martini, Minors by Maria Martini, their Guardian Ad Litem and Darlene Moya, and Isabel Moya, Minor by Darlene Moya, the Guardian Ad Litem, Plaintiffs,

v.

Loren J. RUSSELL, Chief of Police for the City of Huntington Park, and as an individual and the City of Huntington Park; Michael Gwaltney, Scott Seelig and John Aldecoa, Police Officers of the City of Huntington Park, and as individuals, Defendants.

No. CV 80–2086: TJH(Kx).

United States District Court, C.D. California.

March 7, 1984.

Ruben Alex Jacinto, Los Angeles, Cal., Southease Legal Aid Center, South Gate, Cal., for plaintiffs.

Richard Terzian, Burke, Williams & Sorenson, Los Angeles, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HATTER, District Judge.

Trial of this action came at 9:30 a.m. on May 3, 1983 before the Honorable Terry J. Hatter, Jr., United States District Judge, sitting without a jury. Gurujodha S. Khalsa and Alex Jacinto appeared for plaintiffs and Richard R. Terzian appeared for defendants. The Court, having considered the evidence and the arguments of counsel, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On or about noon, October 1, 1979, plaintiff Maria Martini was driving an automobile on State Street near its intersection with Santa Ana Boulevard in the City of Huntington Park, Los Angeles County, California, accompanied by the minor plaintiffs Pedro Martini, Peter Martini, Paul Martini, Mildred Martini, and Isabel Moya (collectively "Minor Plaintiffs").

2. At that time and place, Maria Martini was observed by defendant Michael J. Gwaltney, a police officer employed by defendant City of Huntington Park, impeding traffic by reason of the fact that she had stopped her said automobile and a number of vehicles had come to a halt behind her.

3. Upon being stopped and questioned by Gwaltney, Maria Martini was not able to produce a driver's license, nor a registration document for the automobile which she was driving, nor any other identification for herself. In addition, the license plates on the automobile had expired tags.

4. After a discussion, all plaintiffs were transported to the Huntington Park Police Station by defendants Scott Seelig and John Aldecoa, also police officers employed by the City of Huntington Park, as requested by Gwaltney.

5. Upon arrival at the Huntington Park Police Station all plaintiffs, Maria Martini and the minor children, were placed in a locked detention cell.

6. At no time prior to or including their placement in the cell were plaintiffs informed that they had been arrested nor was the reason for their detention explained.

7. At no time during the course of the stopping and detention, the transportation back to the station, and the subsequent period of incarceration did plaintiff Maria Martini and the five minor plaintiffs, ages 1, 4, 5, 6 and 8 years old, represent a threat to the physical safety of defendants.

8. The detention cell contained insufficient space for all of the plaintiffs to sit, and two minor plaintiffs were forced to stand throughout the period of incarceration.

9. Alternative facilities were available for detaining plaintiff Martini and the minor children.

10. Despite alternative detention facilities, minor plaintiffs were held in a locked detention cell.

11. No offer of alternative detention was ever made to the plaintiff Maria Martini or the minor children by an employee of defendant City of Huntington Park.

12. Plaintiff Martini did not request that the minor children be incarcerated with her in the cell.

13. All the plaintiffs were shocked and frightened by their sudden and unexplained incarceration, and all but Pedro Martini began crying.

14. Pedro Martini began kicking the cell door repeatedly in an attempt to force it open.

15. Plaintiffs were incarcerated in the detention cell for a period of time until

defendant Gwaltney presented plaintiff with the traffic citation for plaintiff Maria Martini's signature.

16. Upon their release from custody, minor plaintiffs Mildred and Pedro Martini and Isabel Moya and plaintiff Maria Martini carrying the two infant plaintiffs, Peter and Paul Martini, were forced to walk, their car having been impounded, without assistance or offer of assistance from defendant police officers, toward their home.

17. Plaintiff's residences were approximately four miles from the police station.

18. Plaintiffs were emotionally and psychologically traumatized as a direct and proximate result of the acts of defendants. Plaintiff children have retained a fear of police and insecurity about being separated from their mother, and, in particular, the plaintiffs Mildred Martini and Isabel Moya, have undergone subsequent psychiatric treatment, episodic nightmares, and increased nervousness, anxiety, and physical discomfort.

19. Minor plaintiff Maria Martini was affected by the incident and the harshness of defendants conduct and underwent continued psychiatric treatment directly relative to this event, and suffered, *inter alia,* from depression, an inability to stop crying and an increased level of nervousness and anxiety.

20. Minor plaintiffs were particularly frightened and traumatized by the treatment accorded by defendants and spent the entire period of detention crying uncontrollably.

21. Because of the conduct, plaintiffs suffered physical and emotional damage, such that *inter alia:* Plaintiff Maria Martini was unable to stop crying upon reaching home, and she suffered from depression and despondency for a substantial period of time after the incident. She suffered acute nervous anxiety and difficulty sleeping and had to undergo psychiatric treatment and drug therapy.

22. Minor plaintiff Mildred Martini suffered nightmares, underwent weekly psychiatric treatment, has suffered anxiety and increased nervous tension inappropriate for a child of her age. She, also, suffered from severe vomiting attacks for several weeks after the incident.

23. Minor plaintiff Pedro Martini as a result of defendants conduct cannot tolerate having a door closed in a room in which he is alone and reacts by violently kicking the door in the manner in which he kicked the jail cell door during the period of incarceration.

24. Minor plaintiff Isabel Moya suffered nightmares and underwent psychiatric counselling.

25. Minor plaintiffs each have a continuing fear of police, including anxious apprehension that they will at some future point be jailed suddenly again with no warning.

## CONCLUSIONS OF LAW

1. Arrest and detention of the minor plaintiffs was clearly without probable cause in that they had committed no infraction or crime and did not pose any threat to the arresting officer. The decision to arrest and detain them pursuant to the tenuous arrest and detention of Maria Martini is conduct which constitutes gross negligence and arbitrary abuse of police power.

2. The minor children's 14th Amendment rights were violated by defendant's conduct. Section 40302.5 of the California Vehicle Code provides:

Whenever any person under the age of 18 years is taken into custody in connection with any traffic infraction case, and he is not taken directly before a magistrate, he shall be delivered to the custody of the probation officer. Unless sooner released, the probation officer shall keep the minor in the juvenile hall pending his appearance before a magistrate. When a minor is cited for an offense not involving the driving of a motor vehicle, the minor shall not be taken into custody pursuant to subdivision (a) of Section 40–302 solely for failure to present a driver's license.

No attempt was made by defendants to take minor plaintiffs before a magistrate; no attempt was made to deliver the minor plaintiffs to the probation officer or other alternate custody, despite the availability of alternate custody facilities.

In the alternative, the question remains whether minor plaintiffs can be deemed to have been taken into custody 'in connection' with a traffic violation. Clearly, all of the minor plaintiffs were innocent passengers in plaintiff Maria Martini's car.

Minor plaintiffs were placed in a secure facility in violation of Welfare and Institution Code section 207 for the mere fact that they were present in the automobile of their mother and guardian on a day when she forgot her purse. Section 207 provides:

> Place of detention:
>
> (a) No court, judge, referee, or peace officer shall knowingly detain in any jail or lockup any person under the age of 18 years unless a judge of the juvenile court shall determine that there are no other proper and adequate facilities for the care and detention of such person, or unless such person has been transferred by the juvenile court to another court for proceedings not under the Juvenile Court Law and has been charged with or convicted of a felony. If any person under the age of 18 years is transferred by the juvenile court to another court and is charged with or convicted of a felony as herein provided and is not released pending hearing, such person may be committed to the care and custody of a sheriff, constable, or other peace officer who shall keep such person in the juvenile hall or in such other suitable place as such latter court may direct, provided that no such person shall be detained in or committed to any hospital except for medical or other remedial care and treatment or observation.

Cal.Welf. & Inst.Code § 207.

The conduct of defendants in incarcerating the minor plaintiffs without due process is clearly conduct which shocks the conscience.

The facts indicate the availability at the police station of previously utilized alternative holding facilities for children and/or adults pending identification.

3. The placement of minor plaintiffs in a locked detention cell pending Mrs. Martini's identification under California Vehicle Code sections 40302(a) and 40307 constitutes gross and deliberate indifference to plaintiff's rights under the Constitution and relevant state statutes sufficient to invoke 42 U.S.C. § 1983.

4. The City of Huntington Park is liable for the acts of its supervisory personnel who caused the deprivation of minor plaintiffs' rights. Where deprivation of an individual's constitutional rights results from the implementation or execution of a "government policy, or custom when made by its lawmakers or those whose edicts or acts may be said to fairly represent official policy" the municipality is liable under § 1983.

5. The Court finds that the arresting officer, Michael Gwaltney, and the transporting officers, Scott Seelig and John Aldecoa, are not liable under Section 1983 since these officers did not make the decision to place the minor children in the detention cell.

6. Minor plaintiffs are entitled to recover damages for deprivation of their constitutional rights under 42 U.S.C. § 1983, as provided in 42 U.S.C. § 1988. Minor plaintiffs will be entitled to recover compensatory damages so that they are reasonably and fairly compensated for the harm and injury endured.

7. Minor plaintiffs have suffered injury as a direct and proximate result of defendants' conduct.

8. Minor plaintiffs suffered psychological injury including but not limited to emotional trauma, humiliation, fright, shock, nervousness, anxiety, embarrassment, indignity, apprehension, worry and ordeal. Four of the minor plaintiffs, Maria Martini, Mildred Martini, Darlene Moya and Isabel Moya underwent psychological therapy in

recovering from the defendants' misconduct.

9. Minor plaintiffs have suffered actual injury from defendants' misconduct. Plaintiffs have endured physical abuse and emotional pain and suffering as a proximate result of defendants' conduct.

10. Defendants' negligent conduct was the direct and proximate cause of minor plaintiffs' injuries.

11. Defendants' actions, in particular regarding the minor plaintiffs, were oppressive and malicious and represent an abuse of authority and discretion far beyond the parameters of good faith and reasonableness in the execution of duties.

12. The adult plaintiffs were not deprived of any rights nor property, and, accordingly, the defendants are not liable to them.

## JUDGMENT

This action came on for trial before the Court, the Honorable Terry J. Hatter, Jr., presiding, and the issues having been duly tried and a decision having been duly rendered.

It is ORDERED and ADJUDGED that the minor plaintiffs, Peter Martini, Paul Martini, Pedro Martini, Mildred Martini, and Isabel Moya, recover from the defendant City of Huntington Park the sum of $5,000.00 each, to be paid into the registry of the Court pursuant to Local Rule 20.4. Attorney's fees in the amount of $7,500.00, and costs of suit in the amount of $432.00, pursuant to 42 U.S.C. §§ 1983 and 1988, will be assessed against the defendant City of Huntington Park.

The adult plaintiffs, Maria Martini and Darlene Moya, will take nothing and will bear their own costs only.

## MEMORANDUM OPINION

Mrs. Martini and five minor children, ages one, four, five, six, and eight, brought this action under 42 U.S.C. § 1983 against the City of Huntington Park, its police chief and several named police officers. This action arose from Mrs. Martini's arrest for impeding traffic while she attempted to pick up her children from school. The arresting officers detained Mrs. Martini because she was unable to produce valid identification of herself or her vehicle at the time the police stopped her. The complaint alleged that defendants deprived Mrs. Martini and the minor children of their constitutional rights by detaining them in a jail cell for a period of time without seeking alternative placement for the children or permitting Mrs. Martini the opportunity to produce valid identification from her home.

To have stated a claim under § 1983, plaintiffs must have alleged and proven two essential elements. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). First, a person acting under color of state law must have committed the offensive conduct. *Id.* Secondly, this conduct must deprive plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States. *Id.* at 531–35, 101 S.Ct. at 1910–12. In addition, to hold the City of Huntington Park liable, plaintiffs must show defendants acted pursuant to governmental custom, policy or regulation. *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Although the Court finds that Mrs. Martini has not been deprived of any federally protected right, it holds that the minor children have been deprived of their right to liberty without due process of law. The controlling elements are discussed in detail below.

Defendants are unable to question whether the complained of conduct in this case satisfies the "under color of state law" requirement. The Huntington Park Police are employees of a political subdivision of the state whose position gives them considerable authority. The City itself is a municipal corporation, i.e., a corporate person, which is subject to liability under § 1983. *See Monell*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Therefore, my discussion turns on the second requirement—

whether the minor children have been deprived of a federally protected right.

■ The Fourteenth Amendment protects individuals from deprivations of liberty that are "without due process of law." But, the concept of due process is a flexible one. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In assessing the adequacy of the procedures used by defendants, the Court has been instructed to weigh the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedures; and, (3) the government's interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

In this case, the official action consisted of incarcerating, in a locked detention cell, five minor children who never represented any physical threat to the defendant's safety, were not the subjects of any criminal nor juvenile process, and placing them in a facility without regard to their comfort or well-being. Case law is silent on the extent of due process rights granted to minor children who are confined with an arrested parent. However, the Court finds the children's rights affected by this action are similar to those of legal incompetents who are involuntarily confined. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Also, the children's rights are comparable to the rights of pretrial detainees to be free from conditions that "shock the conscious." *See Anderson v. Nosser,* 456 F.2d 835 (5th Cir.1972); *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972).

In *O'Connor,* the Supreme Court found a constitutional deprivation of liberty existed when the state involuntarily confines nondangerous mental patients without procedural safeguards. By analogy, minor children can be classified as legally incompetent dependents. Moreover, this Court finds they are entitled to the same protection, if not *more than* mental patients, to have their liberty interests carefully guarded.

In *Anderson,* the Fifth Circuit ordered a directed verdict in favor of plaintiffs in light of evidence that pretrial detainees had been confined to cells with inadequate hygienic facilities, lack of bedding and heat in the state penitentiary. The court found these conditions shocked the conscience of justice and exceeded the purpose behind pretrial detention for a minor offense. 456 F.2d at 840–41. The court recognized plaintiffs' Section 1983 action on the grounds they had been "summarily punished" in violation of their due process rights. *Id.* Although the conditions of the childrens' confinement in an absolute sense were not as severe as in *Anderson,* the court finds their erroneous confinement the equivalent of a summary punishment to these minor children, which defendants could have avoided with little or no cost. Defendants' actions are particularly shocking in view of the complete innocence and youth of the infant plaintiffs.

■ Under § 1983, plaintiffs can recover damages for both misfeasance and for nonfeasance. *See Byrd v. Brishke,* 466 F.2d at 10. Moreover, in reviewing § 1983 liability, the Supreme Court has commented that the statute "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions [or omissions]." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (reversed on other grounds in *Monell* ). Following this same line of reasoning, the Ninth Circuit has noted that the *nature* of the particular constitutional deprivation is more significant in § 1983 cases than whether a defendant's actions were purposeful. *See Navarette v. Enomoto,* 536 F.2d 277, 281 (9th Cir.1976); *accord Byrd v. Brishke,* 466 F.2d at 6. In the present case, supervisory personnel had an affirmative duty to avoid confining the minor children without seeking some alternative placement. Thus, I find the Huntington Park police officials

were grossly negligent in their treatment of these children and subject to liability for nonfeasance.

Defendants could possibly have avoided liability if they had followed the procedures set forth in California Welfare and Institutions Code Section 207. At a minimum, section 207 provides for preconfinement judicial scrutiny in cases where children are in custody. Alternative procedures such as providing a social service guardian or a small nursery-type facility could have eliminated the need to place these minor children in a cell for adults. Defendants presented no evidence that these alternative procedures were unavailable to the city. Indeed, subsequent to this suit, the city has established such alternate facilities for children in the company of detained adults. Thus, the Court finds the children's liberty interest far outweighs any fiscal or administrative burdens imposed by adopting alternatives to confinement. It is clear that the due process *minima* were not met in this case before the children's confinement.

Finally, the Court recognizes that a municipality cannot be held liable on a theory of *respondeat superior* under § 1983. *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality may only be held liable under § 1983 if: (1) Some official policy or custom is responsible for the alleged deprivation of constitutional rights; or (2) a failure of supervision or lack of a training program is so severe that it reaches the level of "culpable negligence" or deliberate indifference to the deprivation of the plaintiff's constitutional rights. *White v. Washington Public Power Supply System*, 692 F.2d 1286, 1289–90 (9th Cir.1982); *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.1979); *Cattan v. City of New York*, 523 F.Supp. 598, 600 (S.D.N.Y.1981). The Court finds the second criteria has been met by the evidence in this case.

The conduct of the Huntington Park Police was particularly egregious in light of the impact on the children. Evidence at trial indicated that all the minor children suffered substantial negative psychological effects after their experience. Testimony also demonstrated that throughout the period of their confinement none of the officers, including supervisory personnel, offered to provide alternative accommodations for the minors despite the children's obvious discomfort.

Courts have indicated that a single, unusually egregious incident can be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to gross negligence on the part of the officials in charge. *See Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.1980); *Cattan*, 523 F.Supp. at 600–01. At trial, the evidence demonstrated that when the transporting officers brought the children to the station, the receiving supervisory officer authorized the children's confinement in the detention cell. In view of the numerous alternatives available to defendants and the specific requirements of state law for the placement of children held in custody, I find that the defendants' actions were attributable to a general indifference to the needs of the minor plaintiffs. Therefore, I find the City of Huntington Park liable to the minor children for depriving them of their constitutional rights in violation of § 1983.