## HIRAM RENEAU *v.* THE STATE.

1. CRIMINAL LAW. *Homicide. Officers. Prisoner.* Where an officer kills a prisoner who is arrested or held in custody for a misdemeanor, to prevent his escape, he will be guilty of murder, or it may be of manslaughter, if death was not intended.

2. OFFICERS. *Their duties in charge of prisoners.* Public officers should use such means to secure their prisoners as will enable them to hold them in custody without resorting to the use of fire-arms or dangerous weapons, and they will not be excused for killing them in an attempt to escape, even where they are held for felony, where, with diligence and caution, the prisoner could be otherwise held

### FROM JEFFERSON.

Appeal in error from the Circuit Court of Jefferson county.   J. G. ROSE, J.

J. M. MEEK and J. P. SWANN for Reneau.

ATTORNEY-GENERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

The prisoner appeals from a conviction of manslaughter for the killing of Vineyard Thomas. The facts are that Thomas, the deceased, was arrested by the prisoner, who was a constable, under a warrant charging an assault and battery, before the justice of the peace. Thomas pleaded guilty, and was adjudged to pay a fine ·and costs, and in default of security was committed to jail, and in the execution of a mittimus issued by the justice for that purpose, the pris-

oner started with Thomas to the county jail, accompanied by another person as guard. On the route Thomas started to run and make his escape. Neither the prisoner or his guard pursued, but after commanding Thomas three times to halt, and not being obeyed, the prisoner fired two shots at Thomas, one of which took effect, killing him almost instantly. The prisoner is shown to be a man of good character, and he expressed regret at the result, saying that he did not intend to kill the deceased. The latter was of bad character for violence, and had threatened that he would not submit to arrest. The law on this subject, as laid down by Mr. Bishop, is, in substance, that an officer having a prisoner in custody for felony who attempts escape, will be excused for killing him if he cannot be otherwise retaken, but if he can be otherwise retaken in any case without resort to such harsh measures, it will be at least manslaughter to kill him. But in cases where the person slain is arrested or held in custody for a misdemeanor, and he fly or attempt to escape, it will be murder in the officer to kill him, although he cannot be otherwise overtaken; yet, under some circumstances, it may be only manslaughter, as if it appear that death was not intended. 2 Bishop's Cr. Law, secs. 648, 649. It is considered better to allow one guilty only of a misdemeanor to escape altogether than to take his life. And we may add that it may be a question worthy of consideration whether the law ought not to be modified in respect to the lower grade of felonies, especially in view of the large number of crimes of this

46—VOL. 2.

character created by comparatively recent legislation, whether as to these even escape would not be better than to take life. The charge of the judge in this case was in accord with the law as above stated, and the jury have given the prisoner the benefit of all doubts, and convicted him of the lower grade of homicide. It is argued that the offense for which the decased was arrested was in reality a felonious assault, and the prisoner had the right to hold him in custody for this grade of offense, but it clearly appears that the warrant under which he was arrested charged only an assault and battery, and the judgment and mittimus of the justice only committed him in default of security for fine and costs for a misdemeanor. We see nothing to change the principle, in the fact that the deceased had been adjudged to pay the fine and costs by the justice of the peace, as to the duties of the officer. His duties were the same, whether he held the prisoner in custody after or before the judgment of the justice. The prisoner, doubtless, acted under the belief that erroneously prevails as to the rights of a public officer, that is, that he may lawfully kill a prisoner if he fails to obey his command to halt. This is a very erroneous and very fatal doctrine, and must be corrected. Officers should understand that it is their duty to use such means to secure their prisoners as will enable them to hold them in custody without resorting to the use of firearms or dangerous weapons, and that they will not be excused for taking life in any case, where, with diligence and caution, the prisoner could be otherwise held.

While the prisoner in this case seems to have honestly entertained the opinion that his duty required him to do what he did, and to have acted entirely without malice, and while he is entitled to strong sympathy, still we are constrained to affirm the judgment.