Odell CUNNINGHAM, Clemmie Ivey, Betty Lue Ivey, a minor, by next friend, James Mason, all next of kin of James Ivey, deceased, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

Buford ELLINGTON, Governor of the State of Tennessee, David Pack, Attorney General of Tennessee, Henry Loeb, Mayor of Memphis, Tennessee, Frank Holloman, Director of Police Department of Memphis, Tennessee, Henry Lux, Chief of Police of Memphis, Tennessee, individually and in their respective official capacities, and Patrolmen W. H. Arnold and K. S. Rooker of the Memphis Police Department, Defendants.

Civ. No. C–70–250.

United States District Court,
W. D. Tennessee, W. D.

March 5, 1971.

Walter L. Bailey, Jr., Ratner, Sugarmon & Lucas, Irvin M. Salky, Louis R. Lucas, Memphis, Tenn., Jack Greenberg, Drew Days, III, Michael Meltzner, New York City, for plaintiffs.

Thomas E. Fox, Deputy Atty. Gen. of Tenn., Nashville, Tenn., for defendants Ellington and Pack.

James M. Manire, City Atty., Frierson M. Graves, Jr., Asst. City Atty., Memphis, Tenn., for remaining defendants.

Before PHILLIPS, Circuit Judge, BAILEY BROWN, Chief Judge, and McRAE, District Judge.

## OPINION AND ORDER

BAILEY BROWN, Chief Judge.

Plaintiffs allege that they are the beneficiaries of the death action resulting from the death of James Ivey, who,

plaintiffs allege, was shot and killed by defendants Arnold and Rooker, officers of the Memphis Police Department, while the officers were investigating a burglary attempt and while he was fleeing from an arrest by those officers. Plaintiffs bring this death action only under 42 U.S.C.A. § 1983; diversity jurisdiction is not alleged. They seek money damages from the officers, from defendant Lux, who was and is Chief of Police, defendant Holloman, who was but is not now Director of Police, and defendant Loeb, who was and is mayor of the city.

Plaintiffs, as an additional claim that they bring as a class action, seek a declaration that the Tennessee statute (T.C.A. § 40–808) that defines the means that may be used in effecting an arrest is unconstitutional on its face and as it was applied, and they seek an injunction against the "enforcement, operation or execution [of the statute] in the form of killing or severely wounding persons who simply flee in order to avoid arrest and when not done in the defense of one's own life, or the life and safety of others."

On application of plaintiffs, a three-judge court was convened pursuant to 28 U.S.C.A. §§ 2281, 2284 to hear and determine only the question of the facial constitutionality of the involved statute. The parties have submitted briefs and oral argument has been had, and the question was taken under advisement.

Before reaching the merits of the plaintiffs' constitutional contentions, we will address ourselves to the question of whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. In their complaint plaintiffs state that they bring their suit "on behalf of all other persons similarly situated, who are citizens of Memphis, Tennessee, who find their rights in jeopardy because of the enforcement, threatened enforcement, and the arbitrary, capricious and bad faith application of the above statute. * * *" Plaintiffs allege that "the class represented by plaintiffs consists of those citizens of Memphis, Tennessee who have been subjected to, are presently subjected to, and who will be subjected in the future to application of this unconstitutional statute. * * *"

We conclude that this action may not be maintained as a class action. In order to maintain an action as a class action under the original or revised rule there must be a class in which membership is "distinguishable or at least definable at the outset." This is particularly necessary under the revised rule because the court must under Rule 23(c) (1) determine as early as practicable whether it can be maintained as a class action and may be required to give notice to members of the class under Rule 23(c) (2) before trial begins. It may also be necessary for the court's judgment to determine who are members of the class under Rule 23(c) (3). 3B J. Moore, Federal Practice ¶ 23.04, at 23–253, 23–254 (2d ed. 1969). In addition Professor Moore notes that delineation of the class aids in determining whether it is to be maintained only as to particular issues, or divided into subclasses; in making orders during conduct of the action; and in dismissing or compromising the action. *Id.* ¶ 23.04 at 23–254. In the instant case membership in the alleged class is neither distinguishable nor definable. Plaintiffs include in their class citizens who will be subjected in the future to the application of T.C.A. § 40–808. It would be impossible now to determine which people in Memphis in the future will allegedly commit felonies and flee from the scene after policemen announce their intent to arrest.

The involved statute, T.C.A. § 40–808, originally enacted in 1858, provides in its entirety as follows:

"40–808. Resistance to officer.—If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest."

It is agreed by all parties that, as construed by the Tennessee courts, this statute means, in the present context,

that an officer may use force that may result in death in preventing the escape of a person that he is attempting to arrest if (1) he reasonably believes that the person has committed a felony and (2) he notifies the person that he intends to arrest him and (3) he reasonably believes that no means less than such force will prevent the escape. The parties also agree that, so construed, the statute merely states the common law. Reneau v. State, 70 Tenn. 720 (1879); Love v. Bass, 145 Tenn. 522, 238 S.W. 94 (1921); Scarbrough v. State, 168 Tenn. 106, 76 S.W.2d 106 (1934); Johnson v. State, 173 Tenn. 134, 114 S.W.2d 819 (1938).

■■ Plaintiffs contend that the involved statute is unconstitutional on its face because it permits the administration of cruel and unusual punishment in violation of the Eighth Amendment. More particularly, they contend that in so authorizing the use of force that may kill a person, the statute authorizes cruel and inhuman punishment and that such force can be constitutionally authorized only when necessary to protect "one's own life or safety, or the life and safety of others." Plaintiffs have cited no case, and we have found none, in which such has been held, and it does appear that this contention is one of first impression. The Eighth Amendment was adopted, as it says, to prevent inhuman or tortuous *punishment* (Hemans v. United States, 163 F.2d 228 (6th Cir. 1947)), and the short answer to plaintiffs' contention is that we simply are not dealing with punishment. An officer, of course, in effecting an arrest, cannot use *any* force for the purpose of punishing a person and to do so is a crime under 18 U.S.C.A. § 242. Clark v. United States, 193 F.2d 294 (5th Cir. 1951). It may well be, as plaintiffs argue, that as a matter of value judgment it would be better to allow persons thought to be felons to escape than to incur the risk of killing them. Indeed, as far back as Reneau v. State, 70 Tenn. 720 (1879), the Tennessee Supreme Court suggested that, in view of the in-

crease of crimes defined as felonies, the rule of law allowing officers to shoot at escaping persons thought to be felons should be re-examined. This, however, is a policy question for the Tennessee legislature or perhaps the Tennessee courts and not for the federal courts in the guise of constitutional adjudication.

■■ Plaintiffs next contend that T. C.A. § 40–808 is unconstitutionally overbroad. The doctrine of overbreadth serves as a safeguard against statutes which proscribe constitutionally protected activity, usually the exercise of First Amendment rights, along with activity which might otherwise be prohibited. The Supreme Court has stated with regard to the doctrine that

"a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." N. A.A.C.P. v. Alabama ex rel. Flowers, 377 U.S. 288, 84 S.Ct. 1302, 1314, 12 L. Ed.2d 325, 338 (1964).

Plaintiffs do not contend that the statute is overbroad in the sense that it limits a person's right to flee from an attempted arrest in situations in which he has a constitutional right to do so. That is to say, plaintiffs do not contend that the statute amounts to an unconstitutional limitation on the "right to travel." Rather they contend that, in so authorizing the use of such force, the statute is an unconstitutional incursion with respect to the person's right to trial by jury, confrontation of witnesses, assistance of counsel, etc. In essence, this is again the argument that the force exercised by the arresting officer is punishment, and so viewed, *any* exercise of force by an officer to effect an arrest for *any* offense (indeed even a simple arrest and the consequent deprivation of liberty!) would be denial of such rights. The answer to this contention is, again, that we are not dealing with punishment. Moreover, all that need be done by one sought to be arrested is to sub-

mit to the arrest and he will enjoy these rights.

■ Next plaintiffs contend that the involved statute is so vague as to violate the due process requirement of the Fourteenth Amendment. As we stated in Original Fayette County Civic and Welfare League, Inc. v. Ellington, 309 F.Supp. 89 at 92 (W.D.Tenn.1970):

"It is now elementary that, to satisfy the requirements of the Due Process Clause, a statute cannot be 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *.' Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)."

We are of the opinion, however, that this statute, as it has been construed, is not unconstitutionally vague. It is true that many crimes are now felonies in Tennessee, but these crimes are defined in Tennessee law. It is also true that, under this statute, in determining that extreme force can be used, it must reasonably be ascertained that less force will not prevent escape, but this standard of conduct is not so vague as to require an officer to guess as to its meaning. It is true that a great deal of responsibility and authority is placed by the statute in the hands of the arresting officer, but if it is determined later by a trier of the fact that the officer made the wrong decision, he may be subjected to civil and even criminal liability.

■ Finally, plaintiffs contend that the statute violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs here rely on Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L. Ed. 1655 (1942). An Oklahoma statute provided that upon the third conviction of a felony involving moral turpitude, a person was subject, after a hearing to determine whether such would harm his health, to being rendered sexually sterile. The statute excepted, however, the crime of embezzlement and certain other crimes. Skinner had been convicted of stealing chickens and twice convicted of robbery and, after a hearing, it was determined that he would be sterilized. The Supreme Court, in holding that the sterilization law violated the Equal Protection Clause, pointed out that, for example, embezzlement and larceny could be substantially the same offense under Oklahoma law in that a bailee who has fraudulent intent at the inception of the bailment is guilty of larceny by fraud when he later converts, but that a bailee whose fraudulent intent develops later is guilty of embezzlement when he converts. A person, the Court pointed out, convicted of such grand larceny three times could be sterilized but a person so convicted of embezzlement could not be.

Plaintiffs argue, under the *Skinner* doctrine, that it likewise is a denial of Equal Protection to allow deadly force to be used against fleeing felons but not against fleeing misdemeanants. And it is certainly quite arguable, as plaintiffs say, that some crimes that are felonies under Tennessee law are less serious than are other crimes that are misdemeanors. But in the *Skinner* opinion the Court said:

"Thus, if we had here only a question as to a State's classification of crimes, such as embezzlement or larceny, no substantial federal question would be raised. [Citations omitted.] For a State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment." 316 U.S. at 540, 62 S.Ct. at 1113, 86 L.Ed. at 1659–1660.

The real basis for the opinion in *Skinner*, in addition to the fact that there was no showing that criminal traits are inheritable, is that the sterilization statute treated persons who had committed substantially the same crime differently.

Accordingly, we conclude, for the reasons herein stated, that T.C.A. § 40–808 is not unconstitutional on its face and that therefore plaintiffs' application for a declaration to that effect should be denied. We further conclude that, since the statute is not unconstitutional, plain-

tiffs' application for injunctive relief should be denied.*

It is therefore ordered and adjudged that plaintiffs' applications for declaratory and injunctive relief be and they are hereby denied.

---

* We do not mean to indicate that there may not be other reasons why plaintiffs would not be entitled to injunctive relief, e. g. since plaintiffs may not maintain this action as a class action, their standing to claim injunctive relief is at least doubtful.