340 So.2d 331 (1976)
Marie Ponville, wife of/and Eddie J. PONVILLE
v.
The TRAVELERS INSURANCE CO.
No. 10917.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
*332 Larry P. Boudreaux, Porteous, Toledano, Hainkel & Johnson, Thibodaux, for plaintiff-appellee.
W. Luther Wilson, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-appellant.
Before LANDRY, EDWARDS and COLE, JJ.
LANDRY, Judge.
The travelers Insurance Co. (Travelers) appeals from judgment awarding plaintiffs (Appellees) damages for personal injuries sustained by Mrs. Marie Ponville and special damages resulting from an automobile accident in which a police car, insured by Travelers, ran into the rear of the Ponville car while in pursuit of a speeding motorist. Mrs. Ponville has answered the appeal seeking an increase in her award for personal injuries. We affirm.
The accident occurred at approximately 3:45 P.M., January 2, 1974, on two lane, paved La. Highway 1, between Napoleonville and Labadieville, Louisiana. The weather was clear and the highway dry. Mrs. Ponville, delivering newspapers, was driving her Chevrolet Nova automobile northerly along the highway. She crossed the southbound lane and drove onto the wide shoulder on the west side of the road and delivered a newspaper to a box which served the home of Aubrey Davis. She then reentered the highway headed in a northerly direction and proceeded diagonally into the northbound lane. After having driven a short distance in the northbound lane, her vehicle was struck from the rear by a police car being driven by Trooper Timothy F. Gann at an admitted speed of 80 miles per hour. It is conceded the impact occurred in the northbound lane of travel. It is also conceded that the police car left 200 feet of measured skid marks prior to the impact, 89 additional feet of skid marks north of the point of contact. The police car came to rest in the northbound lane of travel approximately 105 feet north of the collision point. The Ponville car spun around in a counter-clockwise direction and came to rest facing southerly, in the yard of a residence situated on the east side of the road.
Trooper Gann had been a police officer for three months preceding the accident. He testified he was proceeding southerly along Highway 1, on patrol, when he noticed a red or maroon colored oncoming vehicle proceeding northerly at a very high rate of speed. Upon activating his radar, he clocked the oncoming motorist at 80 miles per hour and immediately decided to change direction and give chase. He proceeded *333 southerly a distance of about 2/10 of a mile until he found a suitable place to turn. The police car was equipped with a siren and four flashing red lights which were approximately 4 inches in diameter. Two of the lights were mounted on the front bumper between the vehicle's regular headlamps. The other two warning lights were mounted on the rear deck of the police unit. The warning lights were so installed that they alternately flashed on and off. After turning around, Trooper Gann activated his siren and warning lights. While he was in the act of changing direction, a vehicle intervened between the Trooper's car and the vehicle being pursued. After passing the intervening automobile, Trooper Gann turned off his siren at which time he was approximately 1/3 of a mile behind the car he was pursuing. He continued his chase with no siren sounding. Trooper Gann did not notice the Ponville car until it was in the act of crossing the center line of the highway angling into the northbound lane approximately 200 feet ahead. He then applied his brakes but could not avoid striking the rear of the slow moving Ponville car.
Mrs. Ponville's testimony is that she was driving her car northerly along the highway, delivering newspapers. She drove onto the west shoulder of the road and made a delivery at the Davis residence. While parked there, she noted the approach from the south of a red automobile traveling at what she deemed to be a very rapid rate of speed. She waited on the shoulder of the highway until the red car passed. She again looked to the south and saw no vehicle in sight although her line of vision was unobstructed for about ½ mile. She then proceeded slowly at an angle across the southbound lane, intending to proceed northerly to then make a delivery to the home of Everett Landry, situated on the east side of the highway about 150 to 200 feet north of the Davis home. After driving into the northbound lane and having traveled about 100 feet therein, or a total of about 150 feet from the mailbox at which she had stopped, her vehicle was struck from the rear. She did not hear a siren and did not see the police car at any time.
The accident was witnessed by 17 year old Richard Spots who lived in the neighborhood and who was walking southerly along the west shoulder of the highway a short distance north of the Davis home immediately before the accident. He first saw the police car, traveling northerly, as that vehicle rounded a curve approximately 2/3 of a mile south of the point of collision. He did not hear a siren; neither did he observe any flashing lights on the police car. Spots saw Mrs. Ponville drive from the west shoulder of the highway diagonally across the road to the northbound lane in which she proceeded some distance before her vehicle was struck from the rear by the northbound police unit. He stated that at the moment of collision, Mrs. Ponville's car was completely in the northbound lane and that its right turn indicator was in operation.
Travelers concedes Trooper Gann was exceeding the lawful speed limit but contends he was legally justified because he was in the act of performing his duty as a law enforcement officer engaged in an emergency mission as defined in LSA-R.S. 32:24, which pertinently provides:
"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
* * * * * *
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
* * * * * *
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals sufficient to *334 warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
Prather v. Gautreaux, 297 So.2d 439 (La. App. 3d Cir. 1974), and Sholar v. U. S. Fire Insurance Company, 261 So.2d 327 (La.App. 1 Cir. 1972), also cited and relied upon by Travelers, are factually inapposite.
As did the trial court, we find that Gann's negligence in traveling at an excessive rate of speed is patent on the face of the record. He was not in compliance with LSA-R.S. 32:24, above, in that he did not have his siren in operation while in pursuit of a speeding motorist at a high rate of speed.
We fail to see wherein Mrs. Ponville was negligent under the circumstances. She was apparently keeping a proper lookout because she duly observed the approach of the automobile Trooper Gann was chasing (the red car she let pass before returning to the traveled portion of the road). Her vision to the south was unobstructed for quite some distance. Considering that Trooper Gann was traveling at an admitted rate of 117 feet per second, and further considering the fact that Mrs. Ponville proceeded from a stopped position, thereby utilizing several seconds to traverse the distance to the point of collision, it may be expected that the police unit was as much as a quarter of a mile away when Mrs. Ponville looked, and, therefore, would not have necessarily caught her attention or have been within range of a proper lookout. But, even assuming the police unit was in sight at the time she looked and that she should have seen it, she was entitled to presume it was traveling at a lawful rate of speed. She heard no siren and indeed could not have heard one because Trooper Gann admitted he shut his siren off after passing the intervening automobile. That she may have failed to see the flashing signal from the front mounted warning lights, we do not deem negligence on her part under the circumstances. The lights were mounted low on the vehicle, on the front bumper. It was daylight and flashing lights would not be as readily observable to a driver as such lights would be in darkness. We absolve Mrs. Ponville from any negligence constituting a proximate cause of this accident.
Mrs. Ponville, 54 years of age, was taken from the accident scene to the hospital where examination revealed her to be suffering from chest, neck, and back pains. X-rays of the skull and rib cage, were negative as to fractures, but those of the cervical and thoracic spine did reveal the presence of degenerative arthritis. Her injuries were diagnosed as cervical strain and contusion of the anterior chest wall. She remained hospitalized overnight and was allowed to return home the following day. Her doctor prescribed muscle relaxant, analgesics, and sedatives to relieve the pain and discomfort she experienced on walking and standing. For 16 days she was laid up at home with back pains. She was seen by her treating physician on January 8, January 22, February 5, and March 2, 1974. On her last visit on March 19, 1974, she complained of slight neck pain. On this occasion she showed no limitation of motion, and her doctor felt she was doing very well. On August 15, 1975, her condition was evaluated by a orthopedic surgeon who found her still suffering from a stiff neck, which condition he attributed to the accident. At trial, Mrs. Ponville testified she was still experiencing back and leg pains for which condition she was taking aspirin. The trial judge awarded Mrs. Ponville $1,500.00 general damages for her injuries.
In the award of general damages for personal injuries, much discretion is vested in trial courts. LSA-C.C. Article 1934(3); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Canter v. Koehring Company, 283 So.2d 716 (La.1973). To modify an award for general damages an appellate court must find that the trial judge or jury has *335 abused the "much discretion" accorded by LSA-C.C. Article 1934(3). Miller v. Thomas, above, Canter v. Koehring Company, above.
Awards in similar cases serve only as aids in determining whether a judge or jury has abused the much discretion in them in the assessment of general damages, they do not rivet a steel frame of uniformity of awards. Miller v. Thomas, above.
We find no abuse of the trial court's discretion in making the award granted herein.
The judgment of the trial court is affirmed, all costs of these proceedings to be paid by Travelers.
Affirmed.
EDWARDS, J., concurs and agrees with the result as to liability, but expresses substantial reservations as to the low award for general damages.