Richard **SCHUMANN**, a minor, by Leah M. Peterson, his parent and natural guardian, et al., Appellants,

v.

**CITY OF ST. PAUL** and Michael McGinn, Respondents.

No. 47763.

Supreme Court of Minnesota.

June 23, 1978.

David W. Nord, James R. Tschida, St. Paul, Minnesota Civil Liberties Union, Nadine Strossen, Minneapolis (amicus), for appellants.

Harriet Lansing, City Atty., Beryl A. Nord, Asst. City Atty., St. Paul, for respondents.

**SCOTT, Justice.**

This is the second appeal of the present action to this court. It is before us again following the completion of a new trial held pursuant to this court's decision in *Schumann v. McGinn*, 307 Minn. 446, 240 N.W.2d 525 (1976), and is an appeal from a judgment entered in favor of defendants, City of St. Paul and a police officer, and against plaintiffs, Richard Schumann, a minor, and his mother, Leah M. Peterson. We affirm.

In this action plaintiffs allege that Officer Michael McGinn tortiously inflicted bodily injury upon Schumann by shooting him while he was fleeing from the scene of a crime. The facts are detailed in this court's prior opinion and need not be repeated here. See, *Schumann v. McGinn, supra*.

On the first appeal, this court remanded the case for a new trial due to erroneous instructions to the jury. Because the new trial would be based on the theory of battery, this court also considered the appropriate jury instructions regarding a police officer's privilege to use a firearm. Plaintiffs had urged this court to adopt a rule that a police officer is protected from tort liability arising out of the use of a firearm in making an arrest only in the situations authorized by the A.L.I. Model Penal Code (Approved Draft, 1962) § 3.07(2)(b), which provides:

"The use of deadly force is not justifiable under this Section unless:

"(i) the arrest is for a felony; and

"(ii) the person effecting the arrest is authorized to act as a peace officer or is assisting a person whom he believes to be authorized to act as a peace officer; and

"(iii) the actor believes that the force employed creates no substantial risk of injury to innocent persons; and

"(iv) the actor believes that:

"(1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or

"(2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed."

To this suggestion, we replied (307 Minn. 467, 240 N.W.2d 537):

" \* \* \* It is in the legislative forum that the deterrent effect of the traditional rule may be evaluated and the law-enforcement policies of this state may be fully debated and determined. The issues upon which the decision turns are more

moral and sociological than they are legal. The legislature, and not this court, is the proper decision maker. As we said in *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 292, 118 N.W.2d 795, 803 (1962):

" 'While the court has the right and the duty to modify rules of the common law after they have become archaic, we readily concede that the flexibility of the legislative process—which is denied the judiciary—makes the latter avenue of approach more desirable.'

"Second, the Model Penal Code provision, as its very name implies, is a proposed statute. It is intended to define justifiable-homicide. We have no power to adopt a justifiable-homicide statute. Defining crimes is a legislative prerogative and in Minn.St. 609.065 our legislature has adopted its own justifiable-homicide statute, one that embodies the common-law view of a law officer's privilege to use a firearm." [1]

The only issue presented by plaintiffs on this second appeal is whether this court's construction of the Minnesota statutes authorizing a police officer to use a weapon to arrest a felony suspect under the facts of this case should be held constitutionally infirm under the due process clause.

As the trial court correctly noted, plaintiffs' constitutional challenge does not find an abundance of support in the case law. The only case cited by plaintiffs in support of their position is *Mattis v. Schnarr*, 547 F.2d 1007 (8 Cir. 1976), judgment vacated sub nom. *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977),[2] wherein the United States Court of Appeals for the Eighth Circuit, by a 4 to 3 decision, held unconstitutional certain Missouri statutes "which permit law enforcement officers to use deadly force to effect the arrest of a person who has committed a felony if the person has been notified that he or she is under arrest and if the force used is restricted to that reasonably necessary to effect the arrest." 547 F.2d 1009. The statutes involved in *Mattis* were similar to the Minnesota statutes.

The basis of the majority decision in *Mattis* was as follows: The due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution provide that no one shall be deprived of life without due process of law. The right to life is a fundamental right and thus the Missouri statutes could be sustained "only if they protect a compelling state interest and are 'narrowly drawn to express only the legitimate state interests at stake.' " 547 F.2d 1019. The majority simply concluded that

---

1. In L.1978, c. 736, § 2, the Minnesota Legislature enacted the following statute which becomes effective August 1, 1978:

"Subdivision 1. For the purposes of this section, 'deadly force' means force which the actor uses with the purpose of causing, or which the actor should reasonably know creates a substantial risk of causing, death or great bodily harm. The intentional discharge of a firearm in the direction of another person, or at a vehicle in which another person is believed to be, constitutes deadly force.

"Subd. 2. Notwithstanding the provisions of section 609.06 or 609.065, the use of deadly force by a peace officer in the line of duty is justified only when necessary:

"(1) To protect himself or another from apparent death or great bodily harm;

"(2) To effect the arrest or capture, or prevent the escape, of a person whom the peace officer knows or has reasonable grounds to believe has committed or attempted to commit a felony involving the use or threatened use of deadly force; or

"(3) To effect the arrest or capture, or prevent the escape, of a person whom the officer knows or has reasonable grounds to believe has committed or attempted to commit a felony if the officer reasonably believes that the person will cause death or great bodily harm if his apprehension is delayed."

This new section in effect incorporates all the salient suggestions recommended by the Model Penal Code.

2. The *Mattis* case was ultimately decided on the basis of the good faith defense. After the Eighth Circuit handed down its opinion, the state appealed to the United States Supreme Court, which vacated the Eighth Circuit's judgment. In an unanimous opinion, the Supreme Court held that the case did not involve a case or controversy because the Federal district court had already held that the defense of good faith had been established and no appeal was taken from that part of the decision. Thus, because no controversy existed, the Supreme Court stated it would not reach the merits of the case—the constitutional issue.

no showing had been made that the state had an interest in the statutes which was greater than, or equivalent to, the right to life. The statutes were thus deemed unconstitutional.

Immediately following the *Mattis* decision, the Sixth Circuit rejected the *Mattis* majority view and adopted the position of the *Mattis* dissenters. *Wiley v. Memphis Police Dept.*, 548 F.2d 1247 (6 Cir.), certiorari denied 434 U.S. 872, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977). The Sixth Circuit noted that the "Eighth Circuit is the only Court to our knowledge which has ever held that such a statute, which is so necessary even to elementary law enforcement, is unconstitutional." 548 F.2d 1252. In fact, the constitutionality of such statutes has been upheld in the majority of cases. See, *Wiley v. Memphis Police Dept., supra; Jones v. Marshall*, 528 F.2d 132 (2 Cir. 1975); *Cunningham v. Ellington*, 323 F.Supp. 1072 (W.D. Tenn.1971). See, also, *Beech v. Melancon*, 465 F.2d 425 (6 Cir. 1972); *Wolfer v. Thaler*, 525 F.2d 977 (5 Cir.), certiorari denied, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 800 (1976).

In *Jones v. Marshall, supra,* the Second Circuit pointed out an inconsistency in terms of procedural due process, as follows:

"The claim is also made that the Connecticut rule violates the due process clause of the Fourteenth Amendment because, procedurally speaking, it permits the arbitrary imposition of death by the officer, violates the presumption of innocence, and denies the suspect a right to trial by jury. Of course each of the due process arguments would apply equally where deadly force is allowed to effect an arrest for a crime which does involve 'conduct including the use or threatened use of deadly force' or where 'there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed.' ALI, note 8, *supra,* § 307(b)(iv). *The killing by the police officer in such a case would, as much as the killing here, deprive the escapee of his life without any procedural guarantees.* It would also

raise the Eighth Amendment implications regarding arbitrary imposition of the death penalty sanction set forth in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), due to the individual arresting officer's discretion in his exercise of the power to kill. Thus, by arguing that the Model Penal Code rule is federal law under 42 U.S.C. § 1983, and is therefore constitutional, the appellant has conceded away, as Judge Blumenfeld held, his procedural due process and *Furman* arguments; *death under Model Penal Code situations could surely be argued to be equally arbitrary and without procedural safeguards. We need not, and therefore do not, consider the argument further."* (Italics supplied.) 528 F.2d 136, note 9.

The reasoning of the Second Circuit is equally applicable to the present case since plaintiffs have argued for adoption of the Model Penal Code rule in both this and their prior appeal.

 In short, "not every tort committed against a private person by an official acting under state law rises to the deprivation of a constitutional right * * *." *Jones v. Marshall*, 528 F.2d 132, 137. Aside from the majority in *Mattis*, "[t]hose courts faced with attacks, [constitutional or otherwise,] on the common law rule allowing all force reasonably necessary to effect the arrest of fleeing or resisting felons have consistently held that these attacks present policy questions for the legislature, not the judiciary." *Mattis v. Schnarr*, 547 F.2d 1007, 1022, (Gibson, C. J. dissenting). See, also, *Jones v. Marshall, supra; Cunningham v. Ellington, supra; Hilton v. State*, 348 A.2d 242 (Maine 1975); *Schumann v. McGinn, supra.*

The clear weight of authority thus sustains the constitutionality of our statutes, and we so hold. The remedy for those seeking an alternative to the current rule was within the power of the legislature to grant and not this court. The legislature has now acted and has made the changes suggested.

Affirmed.

WAHL, Justice (concurring specially).

The legislative forum has undeniable advantages in the comprehensive reform of archaic rules, but this court has the ultimate responsibility to identify constitutional limits. I disagree with the majority opinion insofar as it upholds the constitutionality of Minn.St. 609.065(3), permitting the use of deadly force to apprehend persons suspected of nonviolent felonies. Because I would give this conclusion prospective effect, however, I concur in the result reached.

Insofar as § 609.065(3) permits a public officer or assistant to intentionally take the life of another "in effecting a lawful arrest for a felony or in preventing an escape of a person held therefor," the statute is not only "archaic,"[1] but gravely implicates the most fundamental of Fourteenth Amendment guarantees: that no person shall be deprived of life or liberty without due process of law. See, *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220, 226 (1886); *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465 (1938). At minimum, due process clearly precludes the imposition of summary procedures and summary punishment on the criminally accused. *Screws v. United States*, 325 U.S. 91, 106, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, 1505 (1945); *Johnson v. Glick*, 481 F.2d 1028 (2 Cir.), certiorari denied sub nom. *Employee-Officer John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Anderson v. Nosser*, 456 F.2d 835 (5 Cir.), certiorari denied sub nom. *Nosser v. Bradley*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); *United States v. Jackson*, 235 F.2d 925 (8 Cir. 1956). It does not follow, as the majority suggests, however, that recognition of these due process rights in this context would absolutely preclude the use of deadly force in the apprehension of criminal suspects. Rather, they require that their abrogation—the summary deprivation of human life and liberty—be justified by compelling, competing rights and interests pursuant to a statutory formula narrowly drawn to reflect that balance. Examination of the possible justifications for § 609.065(3) inevitably leads to the conclusion that the use of deadly force to effect an arrest or to prevent escape is constitutionally permissible only when exercised in defense of a substantial and immediate threat to the life and bodily security of other human beings. *Mattis v. Schnarr*, 547 F.2d 1007 (8 Cir. 1976), judgment vacated sub nom. *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977).[2] See,

1. The previous opinion in this matter, *Schumann v. McGinn*, 307 Minn. 446, 240 N.W.2d 525 (1976), discussed in detail the historical derivation for the common-law "fleeing-felon" rule embodied in Minn.St. 609.065(3). There, we concluded that the original rationale for the rule—the limited number of felonies, generally violent and punishable by death—was no longer persuasive in a state which does not have capital punishment, and classifies as felonies crimes such as theft of property or services in excess of $100 in value, Minn.St. 609.52, subd. 3; unauthorized use of a motor vehicle, Minn.St. 609.55; and bribing a public officer, Minn.St. 609.42, subd. 1(2).

2. In *Mattis v. Schnarr*, 502 F.2d 588 (8 Cir. 1974), the parents of an 18-year-old boy slain while fleeing arrest brought an action against the police and city under 42 U.S.C.A. §§ 1983 and 1988, praying for civil damages and declaratory relief. Reversing a dismissal by the trial court, the Eighth Circuit Court of Appeals recognized that the "good faith" defense precluded a damage award but held that declaratory relief was available to test the constitutionality of Missouri's fleeing-felon statute. 502 F.2d 591. The district court on remand upheld the statute. *Mattis v. Schnarr*, 404 F.Supp. 643 (E.D.Mo.1975). The Court of Appeals thereafter reversed, finding the statute an unconstitutional denial of due process because it did not narrowly reflect the asserted state interest in protecting the lives of citizens and police, *Mattis v. Schnarr*, 547 F.2d 1007 (8 Cir. 1976). The Supreme Court, per curiam, vacated the judgment because the absence of a jeopardized present right made declaratory relief wholly hypothetical, not a "case or controversy." *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977).

After reflection, I have declined to adopt this dispositive option here. The instant action is *not* a § 1983 action, and we have neither recognized nor developed the "good faith" defense in simple negligence actions such as this. See, e. g., *Merritt v. City of St. Paul*, 11 Minn. 145 (223) (1866). Moreover, whatever its justifiability in other contexts, its use here sets up a cruel circularity which effectively precludes judicial review: The result under *Ashcroft v. Mattis, supra*, is that the court declines to review the validity of the statute because no

generally, *Landrum v. Moats*, 576 F.2d 1320 (8 Cir. 1978). Therefore, I would so limit the privilege to use deadly force. Consistent with our previous opinions expanding tort liability, however, I would give this opinion prospective effect. See, *Beaudette v. Frana*, 285 Minn. 366, 173 N.W.2d 416 (1969) (prospective abrogation of interspousal tort immunity); *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962) (prospective abrogation of sovereign immunity). See, also, *State v. Olsen*, 258 N.W.2d 898, 907, note 15 (Minn.1977) (adopting the "balancing formula," found in *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 [1967], to determine retroactivity or prospectivity). Thus, Officer McGinn would not be held liable for his earlier action in reasonable reliance upon a statutory privilege now retracted.

I join with the majority opinion in welcoming the recent revision of Minnesota's deadly force law, L.1978, c. 736, § 2, which incorporates the constitutional standard discussed above. While I reach essentially the same ultimate result in this case as the majority, I differ in one important respect: In upholding the constitutionality of § 609.-065, the majority removes any constitutional barrier to later legislative revision or amendment which would return the deadly force statute to those terms. I would hold that the new statute satisfies the constitutional minimum and that any later statutory revisions would be subject to judicial scrutiny.

OTIS, Justice (concurring specially).

I join in the special concurring opinion of Ms. Justice Wahl for the reasons therein set forth and the reasons set forth in my dissent in *Schumann v. McGinn*, 307 Minn. 446, 240 N.W.2d 525 (1975).

liability would attach; no liability attaches because the police are entitled to rely in "good faith" upon the validity of the statute; and the

police will continue to so rely because of the absence of judicial action.